IN THE UNITED DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
1:22-cv-764

BRIGID and JOSEPH WASHINGTON, )
)
Plaintiffs, )
)
vs. )                                          **COMPLAINT**
)
WELLS FARGO BANK, NATIONAL )
ASSOCIATION, ACCURATE )
APPRAISAL SERVICE, and BRYAN A. )
KLOSTERMAN, )
)
Defendants. )
)
_____ )

Plaintiffs, complaining of the acts of the Defendants, allege and state that:

1.      Plaintiffs, Brigid and Joseph Washington (hereinafter "Plaintiffs Washington" or
"Plaintiffs"), by and through their attorneys, bring this action against Defendant Wells Fargo Bank,
National Association (hereinafter "Defendant Wells Fargo"), Defendant Accurate Appraisal
Service (hereinafter "Defendant Accurate Appraisal"), and Defendant Bryan A. Klosterman
(hereinafter "Defendant Klosterman"), or collectively "Defendants," seeking redress for violations
of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq. (hereinafter "ECOA"), the Fair
Housing Act, 42 U.S.C. § 3601 et seq. (hereinafter "FHA"), and the Civil Rights Act, 42 U.S.C.
§§ 1981 and 1982, on behalf of themselves and all others similarly situated.

## INTRODUCTION

2.      Defendants discriminated against Plaintiffs by dramatically undervaluing their
home in an appraisal because of Plaintiffs' race, notwithstanding that the home is located within
Oberlin, an affluent, mostly white neighborhood. Defendant Wells Fargo discriminated against

Plaintiffs by knowingly relying on that appraisal in analyzing and setting terms to refinance the Plaintiffs' mortgage loan and failing to consider or substantively address Plaintiffs' complaints of discrimination.

3.      This action challenges the racially discriminatory mortgage lending practices and appraisal practices of Defendant Wells Fargo, Defendant Accurate Appraisal, and Defendant Klosterman. Defendants engaged in both intentional and disparate impact discrimination through their appraisal practices that undervalued the value of Plaintiffs' home in connection with their application for a residential mortgage loan because of their race. Defendants' development and implementation of policies and practices of undervaluing the property values of customers seeking residential loan mortgages resulted in customers being required to purchase Private Mortgage Insurance (hereinafter sometimes "PMI") insurance and the imposition of higher fees and/or costs on residential mortgage loans to minority customers than it imposed on non-minority mortgage borrowers.

4.      As used in this Complaint, "minority" or "minorities" shall refer to all non-Caucasians and other minority racial groups protected under 15 U.S.C. § 1691, 42 U.S.C. § 3601, and 42 U.S.C. §§ 1981 and 1982. Both Plaintiffs are minorities protected by the foregoing statutes. Brigid Washington is an American citizen of Trinidadian ancestry.  Joseph Washington is an American citizen of Jamaican ancestry.

5.      Plaintiffs seek injunctive, declaratory, equitable relief, punitive damages, and other monetary and non-monetary remedies for Defendants' racially discriminatory conduct.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1343 and 42 U.S.C. § 3613. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that this is a judicial district in which any defendant resides and all defendants are residents of the State in which the district is located.

## PARTIES

8.      Plaintiffs, Brigid and Joseph Washington (hereinafter "Plaintiffs Washington" or "Plaintiffs"), are citizens and residents of Wake County, North Carolina. Joseph Washington earned his B.S. Degrees in Computer Science and Physics from Bethune-Cookman University in Daytona Beach, Florida, 2005 and his Ph.D. in Physics from North Carolina State University in 2010. Joseph Washington is a Senior Technical Staff Member and Data Scientist with IBM where he is a thought leader in Artificial Intelligence and Machine Learning. Brigid Washington is journalist and cookbook author and a recognized authority in the culinary and fine dining fields. She is also a graduate of North Carolina State University (class of 2005), where she guest lectures at the Teaching & Research Kitchen. Brigid is a classically trained chef; she is a graduate of The Culinary Institute of America, where she was also the Editor in Chief of its monthly, La Papillote. Her writing has appeared in Bon Appetit, Epicurious, Food & Wine, Garden & Gun, Real Simple, Southern Living, The New York Times, The Washington Post and many other publications.

9.      Upon information and belief, Defendant Wells Fargo Bank, National Association, is a corporation chartered under the laws of the State of Delaware and operating under the laws of the State of North Carolina. Defendant Wells Fargo Bank offers home mortgages through a

3

division, Wells Fargo Home Mortgage. Defendant Wells Fargo has offices throughout the State of North Carolina and the United States. Its registered agent for service of process in North Carolina is Corporation Service Company, 2626 Glenwood Avenue, Suite 5050, Raleigh, North Carolina 27608.

10. Upon information and belief, Defendant Accurate Appraisal Service is a North Carolina business with offices at 9680 Falls of the Neuse Road #138, Suite 254, Raleigh North Carolina 27615.

11. Upon information and belief, Defendant Bryan A. Klosterman was a licensed North Carolina appraiser, appraiser number A8275, conducted appraisal services for Defendant Accurate Appraisal.

12. Defendant Wells Fargo is subject to laws that regulate the method by which appraisals are ordered and reviewed and its interaction with appraisers.

13. In acting or failing to act as alleged herein, Defendant Wells Fargo and Defendant Accurate Appraisal acted through their employees and/or agents and are liable for the acts and omissions of their employees and agents.

14. In acting or failing to act as alleged herein, each employee or officer of each corporate defendant was acting in the course and scope of his or her actual or apparent authority pursuant to such agencies, or the alleged acts or omissions of each employee or officer as agent was subsequently ratified and adopted by each corporate defendant as principal.

## GENERAL ALLEGATIONS

15. Racial discrimination in America's mortgage lending industry has a long and sordid legacy. As the facts alleged in this Complaint attest, that troubled history persists to this day in discriminatory treatment of minority borrowers by Defendant Wells Fargo.

4

16.     In the past several years, there has been increasing awareness of instances where minority borrowers seeking residential mortgage loans have had their property appraised at a lower amount than comparable properties appraised for non-minority borrowers. For example, the New York Times published an article on 18 August 2022 describing the story of an African-American couple who received an appraisal of $472,000 for their home when the appraiser thought the owners of the house were Black and an appraisal of $750,000 when the couple removed all indications that Black people lived there.  The federal government has recognized the persistence of discrimination in the appraisal process and on 1 June 2021 created an interagency initiative, the PAVE Task Force, to advance steps to study and end discrimination in the property valuation and appraisal process.  The PAVE Task Force has promulgated "The Action Plan to Advance Property Appraisal and Valuation Equity," which it describes as "the blueprint for how all Americans can benefit fairly from the equity built through homeownership" and: (1) outlines the historical role of racism in the valuation of residential property; (2) examines the various forms of bias that can appear in residential property valuation practices; and (3) describes how government and industry stakeholders will advance equity through concrete actions and recommendations.

17.     Defendant Wells Fargo originates and funds mortgage loans through its loan officers and brokers. As part of this mortgage loan process, Defendant Wells Fargo secures an appraisal of a borrower's real estate proffered to secure the mortgage loan.

18.     Upon information and belief, appraisers utilized by Defendant Wells Fargo act at the direction of Defendant Wells Fargo and in conformance with Defendant Wells Fargo's policies and practices regarding valuing the real estate subject to these mortgage loans.

19.     Upon information and belief, Defendant Wells Fargo undertakes policies and practices undervaluing real estate securing mortgage loans it finances or that customers seek to

5

have it finance, requiring PMI and imposing higher fees and costs on residential mortgage loans to its minority customers, such as Plaintiffs, than it imposed on non-minority mortgage borrowers, or at a minimum, Defendant Wells Fargo fails to monitor the practices of its appraisers and to ensure that these appraisers do not engage in discriminatory practices undervaluing the property of Defendant Wells Fargo's customers on the basis of their race.

20.     In June 2020, Plaintiffs began the process of refinancing the loan secured by their home in the City of Raleigh, Wake County, North Carolina with Defendant Wells Fargo, the existing mortgage holder. Plaintiffs' goal was to refinance their mortgage at a lower interest rate, decrease their mortgage term to 15 years and to stop paying PMI.

21.     Plaintiffs purchased their current home in March, 2018 for $440,000. The home is a fully detached single family house that was, at the time of purchase, 1,581 square feet with 4 bedrooms and 2 bathrooms. The house had a large area of unfinished basement, and the remaining interior areas were in need of significant cosmetic and foundational updates. It is located in the historic Oberlin neighborhood of the City of Raleigh. After closing, and prior to moving in, the Plaintiffs invested approximately $65,000 to bring the home up to date, including, for instance, finishing the basement (which added an additional 322 square feet), redoing the kitchen, fixing the foundational issues, removal and replacing the windows upstairs, redoing the hardwood floors upstairs, repainting the ceiling and walls everywhere and installing new appliances.

22.     The Oberlin neighborhood in the City of Raleigh is proximate to the Village District, a destination shopping center comprising high end retail and food stores, restaurants and entertainment; North Carolina State University; Downtown Raleigh; the Alexander Family YMCA; desirable public schools, including Oberlin Magnet Middle School and Broughton High School, as well as many other amenities.

6

23.	The neighborhood's location in West Raleigh is shown on the map below:



24.	From the outset, the Plaintiff's refinancing process with Defendant Wells Fargo was characterized by miscommunications, errors and delays, which Plaintiffs initially attributed to sloppiness and incompetence of Defendant Wells Fargo's employees, but eventually began to understand to be racial in motivation and/or impact.

25.	In accordance with the federal Home Mortgage Disclosure Act, the loan application materials asked for Plaintiffs' demographic information (race, ethnicity, and sex). Plaintiffs selected the "Black or African American" box for ethnicity.

26.	Lenders typically require home appraisals before issuing a loan for purchasing a home or refinancing a mortgage as assurance that a property has sufficient value to serve as collateral should the borrower default on the loan.

27.	As part of the refinance process, Defendant Wells Fargo required an in-person appraisal and arranged for this appraisal.

7

28. Prior to the in-person appraisal, Defendant Wells Fargo reasonably estimated the market value of Plaintiffs' property at $525,000.

29. Plaintiffs spent significant resources getting the home ready for the appraisal.

30. The in-person appraisal was conducted by Defendant Wells Fargo's appraisal service, Accurate Appraisal, and specifically a team of two appraisers, one male and one female, who were both Caucasian/white. Upon information and belief, one of those appraisers was Defendant Klosterman.

31. Plaintiff Brigid Washington was present in her home when the appraisers visited and communicated that she was the homeowner. The home was decorated with proud markers of the family's identity, including family photos, that identified the owners of the home to be Black.

32. The appraisal team was curt, abrupt, and dismissive toward Plaintiff Brigid Washington. The appraisers spent approximately 10 minutes at the Plaintiffs' home.

33. The appraisal was inconsistent with professional appraisal standards in many ways.

34. To appraise Plaintiffs' home, Defendant Klosterman used the sales comparison approach. In this common appraisal method, an appraiser assesses the value of a home by identifying recent sales prices of similar homes in the area, called "comparables" or "comps." The rationale underlying this approach is that the sales prices of comparable properties from the same neighborhood from a similar time period are considered the best indicator of value. However, it simultaneously presents significant fair lending risks, as appraisers have broad discretion in selecting comps and establishing neighborhood boundaries, which opens the door for discrimination.

35. Defendant Klosterman and the appraisal team violated professional appraisal standard by improperly limiting the geographical area from which they considered properties to

8

compare to the Plaintiffs' home. They did not rely on any comparative homes ("comps") in Plaintiffs' neighborhood and, instead, relied on less expensive homes from another neighborhood in reaching their gross undervaluation of Plaintiffs' home.

36.    Defendant Klosterman's and the appraisal team's decision was consistent with a recognized discriminatory appraisal practice of devaluing homes owned by Black or Latino borrowers by manipulating the comps used in the appraisal process.

37.    Further, contrary to professional appraisal standards, the appraisal team did not assign any value to the heated and finished basement area, or the unfinished basement area.

38.    This September 2020 appraisal by Accurate Appraisal valued Plaintiff's home at $480,000, despite the previous higher estimate of valuation.

39.    The September 2020 appraisal by Accurate Appraisal was not only below Defendant Wells Fargo's $525,000 estimate of market value, but it also conflicted with an October 2018 appraisal ordered by Wells Fargo which valued Plaintiffs' property at $490,000. After undertaking the significant upgrades and investments in the home described above, Plaintiffs contacted Wells Fargo in Fall, 2018 regarding refinance and reappraisal. As stated, the appraisal obtained by Wells Fargo in October 2018 valued the property at $490,000. Astonishingly, two years later, Wells Fargo accepted as a basis for underwriting an appraisal valuation that was $10,000 *lower* despite rapid increases in values in the Oberlin/Raleigh/Wake County real estate markets over that period of time.

40.    The appraisal by Accurate Appraisal was a classic case of undervaluation – an appraisal in which the opinion of value was lower than the Defendant's reasonable estimate of the fair market value of the home.

41. There is no race-neutral or legitimate business justification for Defendants' decisions in appraising Plaintiffs' home. Defendants significantly undervalued the Plaintiffs' home because of discrimination against Plaintiffs. Specifically, they did so because Plaintiffs are a Black couple in a generally white neighborhood. This discrimination is apparent based on Defendant Klosterman's actions and demeanor in dealing with Plaintiffs; the refusal to compare Plaintiffs' home to others in their neighborhood that were in fact similar to their own, in contravention of proper appraisal standards (as well as the related decision to choose homes that were not in the area to use as comps); and the failure to make appropriate upward adjustments based on the improvements and condition of Plaintiffs' home.

42. Because of the $480,000 valuation, Plaintiffs were informed that they would be required to continue having to pay for PMI insurance.

43. Plaintiffs were shocked by the dramatic undervaluation of their property, contested the appraisal and asked Defendant Wells Fargo to reconsider or at least obtain another appraisal of their home and to remove the requirement of PMI payments.

44. Defendant Wells Fargo refused, summarily and without due consideration, Plaintiff's request to reconsider its valuation of their home and to cancel the PMI requirement.

45. Plaintiffs objected to Accurate Appraisal's inaccurate undervaluation to Defendant Wells Fargo. Defendant Wells Fargo did not provide any substantive response to Plaintiffs' communications about the discriminatory and flawed nature of the appraisal.

46. The appraiser's undervaluation of Plaintiffs' property was the result of appraisal bias – bias based on race in the opinion of value rendered by Accurate Appraisal.

47. In failing to obtain a reconsideration of value, Defendant Wells Fargo ratified and gave harmful effect to this appraisal bias and the undervaluation of Plaintiffs' property.

Case 1:22-cv-00764-CCE-LPA    Document 1    Filed 09/13/22    Page 10 of 24

48.     Convinced that Defendant Wells Fargo had undervalued their property because of their race, Plaintiffs investigated refinancing their home mortgage with another mortgage company.

49.     Having learned from hard experience with Defendant Wells Fargo, Plaintiffs did not include their race on their mortgage application with Movement Mortgage. Furthermore, they "whitewashed" the house prior to the appraisal, removing indicia that a Black family lived there.[1] Plaintiffs took down all of the photos in their home showing that a Black family owned the home. They also had an older white friend stand in at the Movement Mortgage appraisal visit.

50.     Plaintiffs made no significant improvements to their home in the interim between the Defendant Accurate Appraisal valuation and the valuation from the Movement Mortgage appraisal, nor had home prices in the area changed meaningfully since the Defendant Accurate Appraisal valuation in its September 13, 2020 appraisal.

51.     In October 2020, just a few weeks after the biased undervaluation of Plaintiffs' property by Defendants Accurate Appraisal and Klosterman, the appraiser hired by Movement Mortgage appraised Plaintiff's home at a value of $540,000, or $60,000 more than the Accurate Appraisal.

---

[1] "Whitewashing" is where a Black homeowner removes markers of Black identity, such as family photographs, from their home and enlists a white person to stand in as the homeowner when an appraiser is present, thereby making it seem to the appraiser that the house is owned by white people. Black homeowners regularly see valuations of their homes increase appreciably under whitewashing experiments. The increased prevalence of whitewashing is responsible for raising awareness of appraisal discrimination., *e.g.*, Jonathan Edwards, *A Black Couple Says an Appraiser Lowballed Them. So, They 'Whitewashed Their Home and Say the Value Shot Up*, Washington Post (Dec. 6, 2021), https://tinyurl.com/mudawt3z.

52.     The Movement Mortgage appraisal confirms that Defendant Klosterman's appraisal was grossly inconsistent with appraisal guidelines and principles and were based on racial discrimination.

53.     Defendant Accurate Appraisal's and Defendant Klosterman's dramatically lower valuation reflected their beliefs that a Black family did not genuinely belong in Oberlin and could not be the owners of a higher-valued home.   Defendant Klosterman violated professional standards to devalue Plaintiffs' home because of these racist beliefs. Defendant Wells Fargo relied on Defendant Accurate Appraisal's and Defendant Klosterman's appraisal despite being informed that it was infected by discrimination and refused to correct this racist appraisal.

54.     Defendants' actions reflect intentional racial discrimination and retaliation against Plaintiffs for identifying those actions as discriminatory. Defendants' actions have caused financial and emotional injury to Plaintiffs.

55.     Plaintiffs' experience is emblematic of systemic appraisal discrimination in the United States. Studies show that there is a measurable and pervasive "appraisal gap," whereby homes located in neighborhoods of color and homes owned by people of color are more likely to be undervalued in appraisal than are similar homes located in white neighborhoods or owned by white borrowers.

56.     The harm caused by appraisal discrimination to minority families and society at large is significant. This discrimination prevents people and families of color from being able to purchase homes, access the equity in the homes that they already own, lower costs by avoiding the requirement to purchase PMI, and by improperly diminishing wealth and the transmission of generational wealth via home ownership, as so many Americans have done, contributes to America's racial wealth gap.

12

57.     Plaintiffs have suffered similar harm due to appraisal discrimination caused by Defendants.

58.     Defendants intentionally engaged in discriminatory practices in appraising Plaintiffs' home, including by arbitrarily limiting the area from which Defendant Klosterman drew comparables, then selecting among the least valuable comparables from what remained, and, finally, further depressing the appraisal by making or failing to make adjustments to value that further devalued Plaintiffs' home.

59.     Defendant Klosterman did so because of his beliefs that Plaintiffs, as a Black couple, could not *really* own a valuable home in the Oberlin neighborhood.

60.     Defendant Klosterman's discrimination prevented Plaintiffs from realizing the benefit of their home's true value and obtaining a refinance loan through Defendant Wells Fargo without having to continue purchasing PMI and incur additional expenses for this insurance. Further, as a result of Defendants' discriminatory appraisal and the resultant PMI requirement and extra fees, Plaintiffs had to expend significant time and effort to re-apply for a new loan and endure the extra effort and indignity of whitewashing their home for the Movement Mortgage appraisal.

61.     Defendants' actions also caused Plaintiffs significant emotional distress, including humiliation and embarrassment, arising from being subjected to discrimination and having to whitewash their own home.

62.     Defendant Wells Fargo injured Plaintiffs by relying on Defendant Klosterman's and Defendant Accurate Appraisal's discriminatory appraisal to require PMI and add these fees to Plaintiffs' proposed refinanced mortgage, despite the fact that it knew or should have known that the appraisal was racially discriminatory—it was an obvious and egregious undervaluation of

13

Plaintiffs' home and Plaintiffs objected to the appraisal and brought the undervaluation to Defendant Wells Fargo's attention.

63.     Defendant Wells Fargo and all Defendants further injured Plaintiffs by causing them significant emotional distress, including humiliation and embarrassment, arising from being subjected to discrimination and retaliation and having to whitewash their own home.

64.     Defendants' actions were willful and/or taken in reckless disregard of the civil rights of Plaintiffs.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANT WELLS FARGO

### (The Equal Credit Opportunity Act – 15 U.S.C. §§ 1691-1691(f))

65.     The allegations contained in Paragraphs 1 through 64 are re-alleged and incorporated by reference as if fully set forth herein.

66.     Defendant Wells Fargo engages in credit transactions through its offering, granting, and purchasing of residential mortgage loans and is a "creditor" within the meaning of 15 U.S.C. § 1691(e).

67.     Defendant Wells Fargo's conduct, as alleged herein, constitutes discrimination with respect to aspects of a credit transaction on the basis of race, color, or national origin, in violation of 15 U.S.C. § 1691(a)(1).  Among other things, Defendant Wells Fargo engaged in conduct violating the statute, including, but not limited to:

(a).     By undervaluing Plaintiffs' property, requiring PMI and imposing higher fees on residential mortgage loans to Plaintiffs than it imposed on non-minority mortgage borrowers, Defendant Well Fargo has discriminated against Plaintiffs with respect to credit transactions on the basis of race in violation of the ECOA. 15 U.S.C. § 1691(a); and

14

(b).    In addition, Defendant Wells Fargo's policies and practices which, upon information and belief, provide financial incentives to its appraisers and mortgage brokers and other employees to make subjective decisions regarding the valuations of property and requirement of PMI insurance, thus resulting in higher fees, have a disparate impact on Plaintiffs.

68.    Accordingly, Plaintiffs are aggrieved applicants who are entitled to relief under 15 U.S.C. § 1691e.

69.    As a proximate result of Defendant Wells Fargo's violation of 15 U.S.C. § 1691, Plaintiffs have been injured and are entitled to injunctive relief and damages, or make whole equitable relief.

70.    In addition, Defendant Wells Fargo's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence. Defendant Wells Fargo acted with malice and reckless indifference to the federally protected rights of Plaintiffs. As a result, Plaintiffs are entitled to punitive damages.

71.    Moreover, Defendant Wells Fargo continues to discriminate in violation of the ECOA as described herein. If not enjoined from such violations by the Court, Defendant Wells Fargo will continue to engage in conduct that disregards the rights of Plaintiffs and causes Plaintiffs irreparable injury for which there is no adequate remedy at law. 15 U.S.C. § 1691(e).

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS WELLS FARGO, ACCURATE APPRAISAL, AND KLOSTERMAN

### (The Fair Housing Act – 42 U.S.C. §§ 3601-3619)

72.    The allegations contained in Paragraph 1 through 71 are realleged and incorporated by reference as if fully set forth herein.

73.    Mortgage lending and the providing of residential mortgage loans is a "residential real estate-related transaction" within the meaning of the FHA. 42 U.S.C. § 3605(b).

15

74. Defendants' conduct, as alleged herein, violates multiple provisions of the Fair Housing Act. Specifically, Defendants have engaged in the following discriminatory housing practices:

(a). Discrimination in the terms, conditions, or privileges of a sale of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, or national origin, in violation of 42 U.S.C. § 3604(b);

(b). Making, printing, or publishing, or causing to be made, printed, or published a notice, statement or advertisement, with respect to the sale or rental of a dwelling that indicates a preference, limitation, or discrimination based on race, color, or national origin, or an intention to make such preference, limitation, or discrimination, in violation of 42 U.S.C. § 3604(c);

(c). Discrimination in making available a residential real estate-related transaction, or in the terms or conditions of such a transaction, because of race, color, or national origin, in violation of 42 U.S.C. § 3605;

(d). Coercion, intimidation, threats, or interference with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights under Section 3604 of Title 42, in violation of 42 U.S.C. § 3617.

75. Accordingly, Plaintiffs are "aggrieved persons" as defined in 42 U.S.C. § 3602(i), and are entitled to relief under 42 U.S.C. § 3613(c).

76. As a proximate result of Defendant Wells Fargo's violation of 42 U.S.C. § 3605, Plaintiffs have been injured and are entitled to injunctive and declaratory relief and damages, or make whole equitable relief.

16

77.     In addition, Defendant Wells Fargo's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence. Defendant Wells Fargo acted with malice and reckless indifference to the federally protected rights of Plaintiffs. As a result, Plaintiffs are entitled to punitive damages.

78.     If not enjoined from such violation by this Court, Defendant Wells Fargo will continue to engage in conduct that disregards the rights of Plaintiffs, and cause Plaintiffs and others similarly situated irreparable injury for which there is no adequate remedy at law. 42 U.S.C. § 3613(c).

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS WELLS FARGO, ACCURATE APPRAISAL, AND KLOSTERMAN

### (Violation of Civil Rights/Racial Discrimination – 42 U.S.C. § 1981)

79.     The allegations contained in Paragraph 1 through 78 are realleged and incorporated by reference as if fully set forth herein.

80.     In acting as alleged herein, Defendants have injured Plaintiffs by impairing their right to make and enforce contracts and to the full and equal benefit of the laws for security of property as is enjoyed by white citizens, in violation of 42 U.S.C. § 1981.

81.     Accordingly, Plaintiffs are entitled to relief under 42 U.S.C. §§ 1981 and 1988(a).

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS WELLS FARGO, ACCURATE APPRAISAL, AND KLOSTERMAN

### (Violation of Civil Rights/Racial Discrimination – 42 U.S.C. § 1982)

82.     The allegations contained in Paragraph 1 through 81 are realleged and incorporated by reference as if fully set forth herein.

17

83.     42 U.S.C. § 1982 provides that all citizens of the United States "shall have the same right, in every State and Territory, as is enjoyed by White citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

84.     Defendants discriminated against Plaintiffs because of their race, in that Plaintiffs' property received a lower appraisal value because they are Black.

85.     As a result of Defendants conduct, Plaintiffs have not had the same right as Caucasians to inherit, purchase, sell, hold, and convey real property, and Defendant Wells Fargo has thereby violated 42 U.S.C. § 1982.

86.     Defendants' violation of 42 U.S.C. § 1982 was intentional and malicious.

87.     Accordingly, Plaintiffs are entitled to relief under 42 U.S.C. §§ 1982 and 1988(a).

88.     As a proximate result of Defendants' violation of 42 U.S.C. § 1982, Plaintiffs have been injured, and are entitled to injunctive and declaratory relief and damages, or make whole equitable relief. In addition, Defendants' conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence. Defendants acted with malice and reckless indifference to the federally protected rights of Plaintiffs. As a result, Plaintiffs are entitled to punitive damages.

89.     Defendants' conduct was not solely motivated by racial bias but also a profit motive which motivated them to engage in, condone and/or ratify discriminatory behavior because it also enhanced their profits, including charging fees for PMI mortgage insurance that would not have been charged if Defendants had not grossly undervalued Plaintiffs' home. As such, Defendants also intentionally engaged in fraud, unfair and deceptive practices, and civil conspiracy in an attempt to defraud Plaintiffs by requiring them to purchase PMI mortgage insurance and pay fees that they should not have been required to pay.

## FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS WELLS FARGO, ACCURATE APPRAISAL, AND KLOSTERMAN

### (COMMON LAW FRAUD)

90.     The allegations contained in Paragraph 1 through 89 are realleged and incorporated by reference as if fully set forth herein.

91.     As alleged more fully above, in several communications related to the appraisal of Plaintiffs' home, Defendants made material misrepresentations of fact, including false statements of the value of Plaintiffs' home.

92.     Defendants misrepresented the above-identified material facts knowing Plaintiffs were acting upon the assumption that the facts disclosed were the whole truth.

93.     Defendants knew of the materiality of the above described misrepresentations at the time said representations were made.

94.     Defendants omitted the above-described material facts with the intent to deceive Plaintiffs, and to induce Plaintiffs to continue paying fees for mortgage insurance as more fully described above.

95.     Plaintiffs justifiably relied on the aforementioned representations and statements therein in continuing to pay fees for mortgage insurance and at the time did not know, and had no cause to believe or suspect, that the representations in question were deceptive.

96.     As a proximate result of Defendants' fraudulent actions herein alleged, Plaintiffs were induced to continue to pay fees for mortgage insurance and, but for Defendants' fraudulent actions, Plaintiffs would not have done so.

97.     As a proximate result of Defendants' fraudulent conduct, Plaintiffs have been damaged in an amount to be established by proof at the time of trial.

19

98.     Furthermore, the conduct of Defendants described herein was fraudulent, was committed with malice, or was willful or wanton conduct, thereby entitling Plaintiff to punitive damages against Defendants in an amount appropriate to punish or set an example of Defendants.

## SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS WELLS FARGO, ACCURATE APPRAISAL, AND KLOSTERMAN

## (UNFAIR AND DECEPTIVE PRACTICES ACT – N.C. GEN. STAT. § 75=1.1)

99.     The allegations contained in Paragraph 1 through 98 are realleged and incorporated by reference as if fully set forth herein.

100.     Section 75-1.1 of the North Carolina Unfair and Deceptive Trade Practices Act provides that "'commerce'" includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession."

101.     Defendants were at all times relevant hereto, engaged in commerce in the State of North Carolina by providing appraisal and mortgage services.

102.     Section 75-1.1 of the North Carolina Unfair and Deceptive Trade Practices Act provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful. Under North Carolina law, Defendants' fraudulent acts and misconduct are unfair or deceptive acts or practices in or affecting trade or commerce within the meaning of N.C. Gen. Stat. § 75-1.1 et. seq."

103.     Defendants violated the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§75-1, et seq, when Defendants misrepresented the value of Plaintiffs' home in order to allow it to continue to charge Plaintiffs fees for mortgage insurance.

104.     Plaintiffs have suffered injury in fact and have lost money as a result of Defendants' actions and practices herein alleged. Such injury consists of monies paid to Defendants for fees for mortgage insurance.

20

105.     As described more fully above, Defendants violated the Equal Credit Opportunity Act and Fair Housing Act by its actions. Those actions of Defendants also constitute unfair and deceptive business practices under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§75-1, et seq. because Defendants' practices violate the laws and regulations specified in this Complaint, violate established public policy, and are immoral, unethical, oppressive, unscrupulous and substantially injurious to Plaintiffs.

106.     By engaging in the above-described practices and actions, Defendants have committed one or more acts of unfair competition within the meaning of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§75-1, et seq.

107.     The Defendants' actions alleged herein were willful, and there was an unwarranted refusal by Defendants to fully resolve the matter that constitutes the basis of this action.

108.     Pursuant to N.C. Gen. Stat. § 75-16, Plaintiffs are entitled to recover, and hereby requests, their actual damages and damages in the amount three times its actual injury.

109.     Plaintiffs are further entitled to recover, and hereby requests, and award of their reasonable attorneys' fees and all costs of this action pursuant to N.C Gen. Stat. § 75-16.1.

## SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS WELLS FARGO, ACCURATE APPRAISAL, AND KLOSTERMAN

### (CIVIL CONSPIRACY)

110.     The allegations contained in Paragraph 1 through 109 are realleged and incorporated by reference as if fully set forth herein.

111.     Upon information and belief, Defendants agreed to engage in the course of conduct alleged above, including an agreement to misrepresent the value of Plaintiffs' home in order to profit from the misrepresentations and unlawful conduct alleged herein.

21

112. Defendants' agreement constituted an agreement to perform an unlawful act or a lawful act in an unlawful way, in that Defendants engaged in fraud and unfair and deceptive practices in violation of North Carolina law, as well as violations of various Federal statutes including the Equal Credit Opportunity Act and the Fair Housing Act..

113. Pursuant to this common scheme, Defendants inflicted injury upon Plaintiffs, including financial injury due to paying fees for mortgage insurance they should not have been required to purchase, as well as discrimination.

114. As a proximate result of Defendants' fraudulent conduct, Plaintiffs have been damaged in an amount to be established by proof at the time of trial.

## EIGHTH CLAIM FOR RELIEF AGAINST DEFENDANT WELLS FARGO

## (UNJUST ENRICHMENT)

115. The allegations contained in Paragraph 1 through 114 are realleged and incorporated by reference as if fully set forth herein.

116. By inappropriately charging Plaintiffs fees for mortgage insurance as more fully described above, Defendant Wells Fargo forced Plaintiffs to confer a benefit on Defendant Wells Fargo in the form of these fees.

117. Defendant Wells Fargo consciously intended to accept and accepted this benefit conferred in the form of fees for mortgage insurance, which were inappropriately charged.

118. Defendant Wells Fargo's retention of these inappropriately charged fees for mortgage insurance was unjust.

119. Based on this unjust enrichment, Plaintiffs are entitled to restitution from Defendant Wells Fargo, and Defendant Wells Fargo should be required to disgorge themselves of the fees collected from Plaintiffs in this case and restore them to Plaintiffs.

22

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court grant judgment in their favor and against Defendants as follows:

1.      Declare that Defendants have violated the provisions of applicable federal and state law;

2.      Permanently enjoin Defendants engaging in the conduct described herein, either directly or indirectly through others;

3.      Order Defendants to take appropriate affirmative actions to ensure that the conduct described herein is not engaged in by them again;

4.      Award compensatory damages to Plaintiffs in an amount to be determined by a jury that would compensate them for the injuries caused by Defendant's conducted alleged herein and proved at trial;

5.      Award punitive damages to Plaintiffs in an amount to be determined by a jury that would punish Defendants for the willful, wanton, and reckless conduct alleged herein that would effectively deter similar conduct in the future;

6.      Award to Plaintiffs all other remedies provided for in the North Carolina Unfair Deceptive Trade Practices Act and common law for the violations described in each cause of action, including treble damages pursuant to N.C. Gen. Stat. § 75-16;

7.      Award Plaintiff restitution consisting of all amounts paid to or on behalf of Defendants;

8.      Grant any other equitable relief so as to restore to Plaintiff any money or property, real or personal, which may have been acquired by Defendants by means of Defendants' violation of the North Carolina Unfair and Deceptive Trade Practices Act;

23

9.     Award Plaintiff its costs, disbursements, and attorneys' fees, incurred herein; and

10.    Award such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial on all issues so triable as of right.

This the 12th day of September, 2022.

THE FRANCIS LAW FIRM, PLLC


/s/ Charles T. Francis
Charles T. Francis
North Carolina State Bar No.:  16348
Attorney for Plaintiffs
215 East North Street
Raleigh, North Carolina 27601
Telephone: (919) 828-0801
Email:  cfrancis@thefrancislawfirm.com

24