IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BRIGID WASHINGTON and JOSEPH )
WASHINGTON, )
                              )
        Plaintiffs,            )
                              )
    v.                         )      1:22-CV-764
                              )
WELLS FARGO BANK, NATIONAL    )
ASSOCIATION, ACCURATE         )
APPRAISAL SERVICE, and BRYAN  )
A. KLOSTERMAN,                )
                              )
        Defendants.            )

# MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The plaintiffs Brigid and Joseph Washington have sued the defendants, Wells Fargo Bank, Accurate Appraisal Service, and Bryan Klosterman, alleging racial discrimination in the appraisal of their home as part of a refinancing application. The defendant Wells Fargo moves to dismiss the complaint for failure to state a claim. The motion will be granted in part and denied in part.

## I. Facts Alleged

For purposes of the motion, the Court assumes the truth of the factual allegations in the complaint and draws all reasonable inferences in the plaintiffs' favor. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

In June 2020, the plaintiffs sought to refinance their mortgage with Wells Fargo, decrease the mortgage term, and stop paying private mortgage insurance. Doc. 1 at ¶ 20. Wells Fargo estimated the value of their home at $525,000, *id.* at ¶ 28, but it also required an estimate from an in-person appraisal. *Id.* at ¶ 27. Bryan Klosterman and another employee from Accurate Appraisal did the appraisal. *Id.* at ¶ 30. Mrs. Washington, who is black, *id.* at ¶ 25, confirmed she was the homeowner during the appraisal; the home also contained photos "that identified the owners of the home to be [b]lack." *Id.* at ¶ 31.

"The appraisal team was curt, abrupt, and dismissive toward" Mrs. Washington, and "[t]he appraisers spent approximately 10 minutes at the" home. *Id.* at ¶ 32. Defendant Klosterman assessed the value of the home by identifying recent sales in the area, *id.* at ¶ 34, but "improperly limit[ed] the geographical area" and "relied on less expensive homes from another neighborhood" instead of "comparative homes" in the plaintiffs' neighborhood. *Id.* at ¶ 35. And "contrary to professional appraisal standards," the "team did not assign any value to the heated and finished basement area, or the unfinished basement area." *Id.* at ¶ 37.

Accurate Appraisal valued the home at $480,000, *id.* at ¶ 38, $45,000 less than Wells Fargo's previous estimate. *See id.* at ¶ 28. Although property values in the area had increased over the past several years, the appraisal was less than an October 2018 appraisal ordered by Wells Fargo showing the property was worth $490,000. *Id.* at ¶ 39.

Because of the appraisal, Wells Fargo refused to remove the requirement that the plaintiffs pay for mortgage insurance, and it later refused to reconsider or get another appraisal. *Id.* at ¶¶ 42, 44. Despite the plaintiffs' objections, "Wells Fargo did not

2

provide any substantive response to [the plaintiffs'] communications about the discriminatory and flawed nature of the appraisal." *Id.* at ¶ 45.

Shortly after, the plaintiffs applied to refinance their mortgage with another company and did not disclose their race throughout the process. *Id.* at ¶¶ 48–49. The appraisal obtained during that process valued the home at $540,0000. *Id.* at ¶ 51.

The plaintiffs assert federal claims under the Equal Credit Opportunity Act, the Fair Housing Act, and 42 U.S.C. §§ 1981–1982. They also assert state law claims for fraud, unfair and deceptive trade practices, civil conspiracy, and unjust enrichment. Wells Fargo moves to dismiss the complaint for failure to state a claim. Doc. 8.

## II.   Federal Claims

The plaintiffs assert a claim against Wells Fargo under the Equal Credit Opportunity Act. Doc. 1 at ¶¶ 65–71. To state a claim, the plaintiffs must allege that they are members of a protected class, they applied for and qualified for an extension of credit, the creditor rejected their application despite their qualifications, and the creditor continued to extend credit to others of similar credit stature outside of the protected class. *Wise v. Vilsack*, 496 F. App'x 283, 285 (4th Cir. 2012) (per curiam) (unpublished); *see also Peek v. SunTrust Mortg., Inc.*, No. 16-CV-1415, 2017 WL 3258729, at *3 (E.D. Va. Feb. 15, 2017).

Here, the plaintiffs only allege that Wells Fargo refused to remove the requirement that the plaintiffs pay for mortgage insurance. Doc. 1 at ¶ 42. They have not alleged that Wells Fargo rejected their refinancing application or any other application for credit. *See Walker v. Bank of Am. Corp.*, No. 18-CV-2466, 2019 WL 3766824, at *6 (D. Md. Aug.

3

8, 2019) (noting the complaint expressly alleged that the bank cancelled the plaintiff's loan application); *Wise v. Vilsack*, No. 10-CV-197, 2011 WL 381765, at *1, *3 (E.D.N.C. Feb. 2, 2011) (noting the USDA "den[ied] [the plaintiffs] credit and other benefits under farm programs"), *aff'd*, 496 F. App'x 283 (4th Cir. 2012) (per curiam) (unpublished). The claim against Wells Fargo under the Equal Credit Opportunity Act will be dismissed with leave to amend, if there are additional facts that support the claim.

Wells Fargo also moves to dismiss the plaintiffs' claims that the defendants violated the Fair Housing Act, Doc. 1 at ¶¶ 72–78, and the plaintiffs' civil rights under 42 U.S.C. §§ 1981–1982. *Id.* at ¶¶ 79–89. Upon consideration, the complaint states claims on which relief may be granted and Wells Fargo's arguments are better addressed in the context of a more developed factual record.

### III. State Law Claims

#### A. Fraud

The plaintiffs assert a claim against all the defendants for common law fraud. Doc. 1 at ¶¶ 90–98. The elements of fraud are: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Head v. Gould Killian CPA Grp., P.A.*, 371 N.C. 2, 9, 812 S.E.2d 831, 837 (2018) (cleaned up). "[R]eliance on the allegedly false representations must be reasonable." *Id.* (cleaned up).

Fraud allegations must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that plaintiffs "plead with particularity the circumstances constituting fraud." *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769,

4

781 (4th Cir. 2013) (citing Fed. R. Civ. P. 9(b)) (cleaned up). The plaintiffs vaguely allege that the defendants "made material misrepresentations of fact, including false statements of the value" of their home. Doc. 1 at ¶ 91. But a "vague generalization" that the defendants made false statements "is not sufficiently particular to comply with" Rule 9(b). *Spaulding*, 714 F.3d at 781.

The plaintiffs have also not alleged that they reasonably relied on the appraisal or that the defendants in fact deceived them, and their allegations are to the contrary. The plaintiffs were "shocked" at the valuation from Accurate Appraisal, contested it, and asked Wells Fargo to reconsider. Doc. 1 at ¶ 43. They quickly asked for a second opinion because they were "convinced" Wells Fargo "undervalued their property because of their race." *Id*. at ¶¶ 48, 51. Thus, they have not alleged that they relied on the appraisal, *see Rider v. Hodges*, 255 N.C. App. 82, 89, 804 S.E.2d 242, 248 (2017) (concluding the plaintiff did not rely on an invoice because "he immediately recognized" it was incorrect), nor have they alleged the defendants deceived them. *See id.* (concluding the plaintiffs "cannot claim they were deceived" if they knew the invoice was false). The fraud claim against Wells Fargo will be dismissed.

### B. Chapter 75

The plaintiffs assert a Chapter 75 claim against all the defendants. Doc. 1 at ¶¶ 99–109. To prevail, they must allege the defendants committed (1) an unfair or deceptive practice, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiffs. *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007).

5

When a Chapter 75 claim is based upon an alleged misrepresentation by the defendant, as here, Doc. 1 at ¶ 103, "the plaintiff must show actual reliance on the alleged misrepresentation in order to establish that the alleged misrepresentation proximately caused the injury of which plaintiff complains." *Sunset Beach Dev., LLC v. AMEC, Inc.*, 196 N.C. App. 202, 211, 675 S.E.2d 46, 53 (2009) (cleaned up). As previously stated, the plaintiffs have not alleged that they relied on the misrepresentations. The Chapter 75 claim against Wells Fargo will be dismissed to the extent it is based on fraud.

The plaintiffs also assert the defendants committed an unfair or deceptive trade practice by violating federal law. Doc. 1 at ¶ 105. The defendants contend this claim is preempted by the federal Homeowners Protection Act. Doc. 9 at 17–18. The HPA provides detailed requirements for disclosures and cancellations of private mortgage insurance. *See* 12 U.S.C. §§ 4901 et seq. The HPA has an express preemption clause, which provides that it "shall supersede any provisions of the law of any State relating to requirements for obtaining or maintaining private mortgage insurance in connection with residential mortgage transactions, cancellation or automatic termination of such private mortgage insurance." 12 U.S.C. § 4908(a)(1).

The HPA preempts state law claims that are rooted in the HPA's detailed statutory requirements. *See Dwoskin v. Bank of Am., N.A.*, 888 F.3d 117, 121 (4th Cir. 2018) (noting the HPA preempted state law claims "rooted" in a bank's inadequate disclosures); *see also Fellows v. CitiMortgage, Inc.*, 710 F. Supp. 2d 385, 402 (S.D.N.Y. 2010) (dismissing state law claim that had a "direct and substantial" connection with "requirements concerning [mortgage insurance] cancellation and disclosure"). But the

HPA does not preempt every claim involving mortgage insurance. *See Dwoskin v. Bank of Am., N.A.*, 850 F. Supp. 2d 557, 568–69 (D. Md. 2012) (finding the HPA did not preempt fraud, misrepresentation, and consumer protection claims based on false statements because the claims "impose[d] a separate duty" from the HPA's specific requirements); *see also Scott v. GMAC Mortg., LLC*, No. 10-CV-24, 2010 WL 3340518, at *5 (W.D. Va. Aug. 25, 2010) (allowing fraud claims to proceed would not "confound Congress's objective in passing the HPA, that is, the creation and enforcement of a uniform set of regulations governing disclosure of mortgage insurance").

Here, the plaintiffs' Chapter 75 claim based on racial discrimination in violation of federal law is distinct from the requirements of the HPA. Proving the Chapter 75 claim will not focus on the HPA's detailed requirements; it will focus on whether the defendants racially discriminated against the plaintiffs. *See Dwoskin*, 850 F. Supp. 2d at 568. And allowing the claim to go forward will not frustrate the "uniform set of regulations" in the HPA. *See Scott*, 2010 WL 3340518, at *5; *see also Fellows*, 710 F. Supp. 2d at 403–04 ("[The] breach of contract claim does not run afoul of the HPA's preemption provision or frustrate its purpose."). The Chapter 75 claim based on racial discrimination in violation of federal law will not be dismissed.

### C. Civil Conspiracy

The plaintiffs allege a claim for civil conspiracy against all the defendants. Doc. 1 at ¶¶ 110–14. Civil conspiracy is not a separate civil action; "recovery must be on the basis of sufficiently alleged wrongful overt acts." *Dove v. Harvey,* 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005) (cleaned up). The plaintiffs must allege "(1) an

7

agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Fox v. City of Greensboro*, 279 N.C. App. 301, 321, 866 S.E.2d 270, 287 (2021) (cleaned up). The plaintiffs' "evidence of the agreement must be sufficient to create more than a suspicion or conjecture." *Id.* at 288. And plaintiffs "cannot rely on the same facts to establish both the underlying tort and the conspiracy to commit that tort, but rather must make an additional showing to support the conspiracy claim." *Superior Performers, Inc. v. Thornton*, No. 20-CV-123, 2021 WL 2156960, at *9 (M.D.N.C. May 27, 2021).

Here, the plaintiffs have not adequately alleged an agreement between the defendants. They allege the defendants "agreed to . . . misrepresent the value of" the plaintiffs' home, Doc. 1 at ¶ 111, and that this "agreement constituted an agreement to perform an unlawful act or a lawful act in an unlawful way." *Id.* at ¶ 112. But these allegations are conclusory and rely only on suspicion and conjecture. *See Jackson v. Blue Dolphin Commc'ns of N.C., L.L.C.*, 226 F. Supp. 2d 785, 791 (W.D.N.C. 2002). The plaintiffs rely on the same facts to establish the conspiracy as they do to establish the underlying claims. The civil conspiracy claim against Wells Fargo will be dismissed.

### D. Unjust Enrichment

The plaintiffs assert a claim for unjust enrichment against Wells Fargo, Doc. 1 at ¶¶ 115–19, alleging that Wells Fargo "inappropriately charg[ed]" the plaintiffs for the mortgage insurance and "forced" the plaintiffs to confer a benefit "in the form of these fees." *Id.* at ¶ 116.

8

Unjust enrichment is "an equitable remedy based upon a quasi contract or a contract implied in law." *Whitfield v. Gilchrist*, 348 N.C. 39, 42, 497 S.E.2d 412, 415 (1998). It applies "[o]nly in the absence of an express agreement of the parties." *Id.* The plaintiffs cannot recover for unjust enrichment if there is an express contract. *See Augustson v. Bank of Am., N.A.*, 864 F. Supp. 2d 422, 438 (E.D.N.C. 2012) (collecting cases). Here, the plaintiffs allege that Wells Fargo was their "existing mortgage holder," Doc. 1 at ¶ 20, and that Wells Fargo required the plaintiffs to continue paying for the mortgage insurance under the original agreement. *See id.* at ¶ 42. Since there is an express agreement, the plaintiffs cannot recover under the equitable remedy of unjust enrichment. The unjust enrichment claim against Wells Fargo will be dismissed.

It is **ORDERED** that:

1. The defendant Wells Fargo's motion to dismiss, Doc. 8, is **GRANTED in part** and **DENIED in part.**

2. The plaintiffs' claim under the Equal Credit Opportunity Act against Wells Fargo, Doc. 1 at ¶¶ 65–71, is **DISMISSED** with leave to file an amended complaint within ten days, if appropriate.

3. The plaintiffs' claims against Wells Fargo for fraud, *id.* at ¶¶ 90–98, civil conspiracy, *id.* at ¶¶ 110–14, and unjust enrichment, *id.* at ¶¶ 115–19, are **DISMISSED**.

4. The plaintiffs' Chapter 75 claim against Wells Fargo, *id.* at ¶¶ 99–109, is **DISMISSED** to the extent it is based on fraud but not to the extent it is based on racial discrimination in violation of federal law.

5. Wells Fargo **SHALL** answer the complaint within 14 days unless the plaintiffs file an amended complaint, in which case the answer is due no later than 10 days after the filing of the amended complaint. If Wells Fargo seeks to dismiss the amended ECOA claim, it **MUST** still answer the claims allowed to proceed under this Order and any such motion will not delay discovery.

6. The matter is referred to the Magistrate Judge for an Initial Pretrial Conference.

7. All parties **SHALL** exchange their Initial Pretrial Disclosures per Federal Rule of Civil Procedure 26 no later than February 15, 2023.

This the 25th day of January, 2023.

_____
UNITED STATES DISTRICT JUDGE